**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Seung Ju Shin,

Plaintiff,

- against -

Foresta, Inc. d/b/a Infore and
Sam Ju Park a/k/a Sam J. Park a/k/a San J. Park, and
Ji Hee Kim a/k/a Ji Kim a/k/a "J", as an individual,

Defendants.

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff Seung Ju Shin, ("Plaintiff"), by counsel, Seo Law Group, PLLC, upon personal knowledge, complaining of Defendants, Foresta, Inc. d/b/a Infore and Sam Ju Park a/k/a Sam J. Park a/k/a San J. Park, and Ji Hee Kim a/k/a Ji Kim a/k/a "J", jointly and severally (collectively referred herein as "Defendants") alleges:

## NATURE OF THE ACTION

1.    Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"), he is entitled to recover from Defendants: (a) Unpaid minimum wage, (b) unpaid overtime compensation, (c) liquidated damages, (d) prejudgment and post-judgment interest, (e) compensatory damages for retaliatory termination; and attorneys' fees and costs.

2.    Plaintiff further alleges that, pursuant to the New York Labor Law, they are entitled to recover from Defendants: (a) unpaid minimum wages, (b) unpaid overtime compensation, (c) unpaid "spread of hours" premium for each day their work shift exceeded ten (10) hours, (d)

liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (e) prejudgment and post-judgment interest, and  (f) compensatory damages for retaliatory termination, and (g) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarter and office within this district, and Defendants operate a hair salon located in this district. Further, Plaintiff was employed by Defendants in this district.

## THE PARTIES

### *Plaintiff*

### *Plaintiff Seung Ju Shin ("Plaintiff")*

5.      Plaintiff is an adult individual residing in Queens County, New York.

6.      Plaintiff was employed by Defendants at their hair salon as a hairdresser from in or about April 2014 until on or about July 10, 2022.

7.      Plaintiff consents to being a party plaintiff pursuant to 29 U.S.C. § 216(b).

8.      The consent to sue form for the Plaintiff is attached hereto as **Exhibit 1.**

*Defendants*

**Foresta, Inc. d/b/a Infore ("Infore")**

9.      The Corporate Defendant, Foresta, Inc., (hereafter, "Corporate Defendant" or "Infore") is a domestic business corporation and existing under the laws of the State of New York with a Service of Process address at 35-29 154th Street, Flushing, NY 11354 in the New York Department of State record.

10.     Upon information and belief, Corporate Defendant was incorporated on November 8, 2011.

11.     Upon information and belief, Corporate Defendant operated a hair salon under the business name of Infore, located at 35-29 154th Street, Flushing, NY 11354 until around July 2021.

12.     Upon information and belief, Corporate Defendant moved its principal place of business in or around July 2021, and began its hair salon operation at 156-44 Northern Blvd., Flushing, NY 11354 under the same business name of Infore.

13.     Upon information and belief, Infore is at present and has been at all times relevant to the allegations in this Complaint been an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and they have each had annual gross volume sales of not less than $500,000.

14.     Infore is an "employer" within the meaning of the FLSA 29 U.S.C § 203 (d) and the New York State Labor Law ("NYLL") § 2, 190, and/or 651 that runs and profits from a

business operation as a hair salon(s) located at 35-29 154th Street, Flushing, NY 11354 and 156-44 Northern Blvd., Flushing, NY 11354.

***Defendant Sam Ju Park a/k/a Sam J. Park a/k/a San J. Park ("Defendant Park")***

15.     Upon information and belief, Defendant Sam Ju Park a/k/a Sam J. Park a/k/a San J. Park (hereafter, "Defendant Park") is an individual who has been the de facto and de jure owner, officer and/or agent of Defendant Corporation during the relevant time period, and he is sued individually. Defendant Park has possessed and exercised operational control over Defendant Corporation, for example, he has at times relevant to this litigation determined the wages and compensation of Defendants' employees, including Plaintiff, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees. In particular, Defendant Park has a prominent role in the setting of salaries for Corporate Defendant's employees and hires and fires Corporate Defendant's employees.

16.     Upon information and belief, Defendant Park has ownership interest in the Corporate Defendant, and he is a manager and supervisor of all his employees and the employees of the Corporate Defendant.

17.     Upon information and belief, Defendant Park was and/or is CEO and one of the operators of Infore at 35-29 154th Street, Flushing, NY 11354 and 156-44 Northern Blvd., Flushing, NY 11354, together with Defendant Ji Hee Kim a/k/a Ji Kim a/k/a "J".

18.     Upon information and belief, Defendant Park is the Founder and CEO of Infore located at 35-29 154th Street, Flushing, NY 11354 and 156-44 Northern Blvd., Flushing, NY 11354.

19.     Defendant Park is known to Plaintiff as the "owner" of Infore.

20.     Defendant Park is known to Plaintiff to be his "immediate supervisor" and

exercised direct supervisory authority over Plaintiff at Infore.

21.    Upon information and belief, Defendant Park manages all aspects of the Corporate Defendant's finances including handling its employees' payroll, together with Defendant Ji Hee Kim a/k/a Ji Kim a/k/a "J".

***Defendant Ji Hee Kim a/k/a Ji Kim a/k/a "J" ("Defendant Kim")***

22.    Upon information and belief, Defendant Ji Hee Kim a/k/a Ji Kim a/k/a "J" (hereafter, "Defendant Kim") is an individual who has been the de facto and de jure owner, officer and/or agent of Defendant Corporation during the relevant time period, and he is sued individually. Defendant Kim has possessed and exercised operational control over Defendant Corporation, for example, she has at times relevant to this litigation determined the wages and compensation of Defendants' employees, including Plaintiff, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees. In particular, Defendant Kim has a prominent role in the setting of salaries for Corporate Defendant's employees and hires and fires Corporate Defendant's employees.

23.    Upon information and belief, Defendant Kim has ownership interest in the Corporate Defendant, and she is a manager and supervisor of all her employees and the employees of the Corporate Defendant.

24.    Upon information and belief, Defendant Kim was the co-operator of Infore at 35-29 154th Street, Flushing, NY 11354 and 156-44 Northern Blvd., Flushing, NY 11354, together with Defendant Park.

25.    Defendant Kim is known to Plaintiff as the "co-owner" of Infore.

26.    Defendant Kim is known to Plaintiff to be a "supervisor" at Infore and is Defendant Park's wife.

27.     Whenever Defendant Park was not available, Defendant Kim was known to Plaintiff as a "substitute owner" of the Corporate Defendant.

28.     Upon information and belief, Defendant Kim manages all aspects of the Corporate Defendant's finances including handling its employees' payrolls, together with Defendant Park.

29.     Upon information and belief, Defendant Kim is one of the signatories of the Corporate Defendant Infore's business account(s), together with Defendant Park.

30.     Plaintiff was "employee" of Individual Defendants Park and Kim within the meaning of 29 U.S.C § 203 (e)(1) and NYLL § 190(2).

31.     Defendants Park and Kim and Corporate Defendant through Individual Defendants controlled the hours, the task assignments and the overall work associated with Plaintiff's work at the business premise(s) of Infore.

32.     Defendants Park and Kim, and Corporate Defendant through Individual Defendants, controlled the terms and conditions of Plaintiff's employment and are thus "employers" within the meaning of 29 U.S.C. § 203(d) and NYLL § 190(3).

33.     Defendants employed Plaintiff to work as a non-exempt hairdresser worker for Defendants' hair salon from in or about April 2014 through on or about July 10, 2022.

34.     The work performed by Plaintiff was directly essential to the business operated by Defendants.

35.     Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned minimum wages in direct contravention of the FLSA and New York Labor Law.

36.     Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

37.     Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned "spread of hours" premium in direct contravention of the New York Labor Law.

38.     Defendants terminated Plaintiff's employment in retaliation after he raised concerns to Defendants about being underpaid in violation of the FLSA and New York Labor Law.

39.     Plaintiff has satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

40.     Defendants Park and Kim actively participates in the day-to-day operation of the hair salon, Infore. For instance, Defendant Park and Kim make the decision to hire and hire employees; supervise and direct the work of the employees, and instruct the employees how to perform their jobs.

41.     Additionally, Defendant Park and Kim create and implement all business policies and makes all crucial business decisions, including decisions concerning the number of hours the employees are required to work, the amount of pay that the employees are entitled to receive, and the manner and methods by which the employees are to be paid.

42.     Upon information and belief, Defendant Park closely supervised Infore's hairdresser employees, including Plaintiff while he was also working as a hairdresser at Infore.

43.     Defendant Park is known to Plaintiff to be the "boss" while working at Infore.

44.     Upon information and belief, Defendant Kim directed and supervised Infore's employees, including Plaintiff while she was working as a receptionist and managing the Infore's finances at the cash register.

45.     Specifically whatever Defendant Park was absent at Infore, Defendant Kim directly managed and supervised Infore's employees, including Plaintiff until around March 2020.

46.     Since March 2020, Defendant Kim was physically present at Infore *primarily* on the days that she delivered the Infore's employees' compensation on behalf of Defendants or for the days/hours whenever Defendant Park was not available at Infore.

47.     Defendant Kim is also known to Plaintiff as the "boss" during the entire time of Plaintiff's employment at Infore.

48.     In or about April 2014, Defendants hired Plaintiff to work as a non-except hairdresser for Defendants' hair salon doing business as Infore located at 35-29 154th Street, Flushing, NY 11354 and 156-44 Northern Blvd., Flushing, NY 11354.

49.     Upon information and belief, Defendants "moved" its principal place of the hair salon business to a new location at 156-44 Northern Blvd., Flushing, NY 11354 in July 2021 and continued their hair salon operation under the same business name of Infore.

50.     Since on or around July 29, 2021, Plaintiff began working at the new location as a hairdresser at the direction of Defendant Park.

51.     Neither at the time of hire, or anytime thereafter, did Defendants provide Plaintiff with a written wage notice setting forth, among other things, his regular hourly rate of pay, any tip credits taken against the statutory minimum wages, and Plaintiff's corresponding overtime rate of pay.

52.     Defendants failed to provide Plaintiff with a written wage notice and/or tip credit notification.

53.     Plaintiff continually worked for Defendants in those capacities until on or around July 10, 2022.

54.     Throughout Plaintiff's employment with Defendants, he worked over forty (40) hours per week.

55.     Plaintiff was not required to punch a time clock or other time-recording decide at the beginning and end of his work shift.

56.     Upon information and belief, Infore's official business hours were from 10:00 am to 8:00 pm until around January 2020.

57.     Upon information and belief, since February 2020, Infore's official business hours has changed and it was *supposed* to close 1 hour early at 7:00 pm.

58.     Regardless of the place(s) of Infore's operation, Defendants required Plaintiff to stay after the official business hours to clean up the business site and provide service to the customer(s) who walked in close to the end of its business hour.

59.     From April 2014 until in or around January 2020, Plaintiff worked five (5) days per week with Tuesdays and Wednesdays off and, his work schedule consisted of over ten (10) hours per day from 10:00 am to between 8:00pm and 8:30 pm each day. On multiple occasions, Plaintiff was required to work until as late as 11:00 pm whenever Defendants assigned late walk-in customer(s) to Plaintiff. As such, Plaintiff worked at least (10) – (10.5) hours each day or between (50) – (52.5) hours per week during this period.

60.     From in or around February 2020 until the last day of Plaintiff's employment on or about July 10, 2022, Plaintiff worked on the same schedule e.g., five (5) days per week with Tuesdays and Wednesdays off, but from 10:00 am until a few minutes after 7:00 pm each day. As such, Plaintiff worked at least (9) hours each day or (45) hours per week during this period.

61.     Plaintiff did not receive a designated break for rest or meals.

62.     From beginning of Plaintiff's employment until the end of 2020, Defendants paid Plaintiff at a fixed daily rate at $100.00, $110,00, $120,00, $130,00, or $140.00 per day. At first

Defendants set Plaintiff's daily rate at $100.00 per day and increased $10.00 in every 1-2 years and paid Plaintiff $140.00 per day in 2020.

63.     From in or around April 2014 until the end of December 2020, Defendants paid Plaintiff on weekly basis in combination of check and cash.

64.     Since the beginning of 2021 until around March 16, 2022, Defendants unilaterally and arbitrarily announced that instead of paying Plaintiff at a fixed daily rate, Defendants would pay 45% of the customer(s)' service charge *only if* Plaintiff was assigned to perform the service to that customer(s).

65.     After Defendants changed Plaintiff's compensation structure, Defendants paid him approximately $2,300.00 - $2,400 in every two (2) to three (3) weeks only if Defendants assigned and/or permitted Plaintiff to perform the service to Infore's customer(s).

66.     After Defendants stopped paying Plaintiff at a fixed daily rate, Plaintiff did not receive any compensation for the day(s) and/or week(s) that Defendant Park did not assign any customer(s) to Plaintiff. As such, Plaintiff complained to Defendant Park about the unfair and arbitrary pay practice on multiple occasions.

67.     Thereafter since on or about March 17, 2022, Defendants again unilaterally and arbitrarily announced that Defendants would allow Plaintiff to receive 50% of the customer(s)' service charge from the customers that Plaintiff performed service to that customer(s) at Defendants' hair salon. Again, Plaintiff complained to Defendant Park about his inability to receive any set compensation although Plaintiff was required show up and stand-by at Infore during his scheduled shift and Defendants' unfair and arbitrary pay practices.

68.     As Plaintiff complained to Defendant Park on numerous occasions, Defendant Park stopped assigning any customers to Plaintiff and even prevented Plaintiff from answering

customers' phone call(s). Whenever Infore's phone was ringing, Defendant Park "ran" to the reception desk where the telephone was placed and immediately picked up the phone before Plaintiff reached to the reception desk. Thereafter, Defendant Park kept the telephone in his possession and carried the phone around in the business site to completely block Plaintiff's access to the phone.

69.     When Defendant Park received customers' calls to schedule an appointment, he assigned the customer to himself or to another hairdresser. Defendant Park only allowed Plaintiff to take customer(s) that insisted to receive services from Plaintiff.

70.     Since March 2020, Defendant Kim was occasionally present at Infore and handled reservations for the customers, but her presence did not increase Plaintiff's chances of performing services for customers. The ratio of assignments remained essentially the same regardless of which Defendant took the reservations.

71.     On the days that Defendants not assign any customers, Plaintiff had to stand-by at Defendants' hair salon and/or assist Defendant Park or other hair stylists while they were providing services to Infore's customers. On these day(s) and/or week(s), Defendants did not pay Plaintiff at all because Plaintiff did not perform any service *by himself* to Infore's customers.

72.     On or about July 9, 2022, Defendant Park assigned another hairdresser's customer to himself and the hairdresser complained to Defendant Park. As their altercation intensified, Defendant Park blamed Plaintiff that he caused another hairdresser to behave like Plaintiff and make similar complaints. Defendant Park yelled at Plaintiff and told him, "you work until tomorrow and **get out,**" without any explanation.

73.     On July 10, 2022, Plaintiff worked until around 7:00 pm at Infore. After Plaintiff completed his shift, Defendant Kim delivered a cash payment to Plaintiff and told him, "please be understanding of Mr. Park's reaction. He must have been under stress."

74.     Thereafter, Defendants Park and Kim terminated Plaintiff, and Plaintiff was not allowed to work at Infore any further.

75.     During Plaintiff's employment, Plaintiff was not paid proper minimum wages and overtime compensation. Plaintiff was paid between $100.00 and $140.00 from until the end of 2020, and thereafter, 45% or 50% of the customers' service charges only if Defendant Park allowed Plaintiff to provide service to any of Infore's customers.

76.     Upon information and belief, Defendant Kim was primarily responsible for delivering Plaintiff's compensation during this employment at Infore.

77.     Upon information and belief, Defendant Park, together with Defendant Kim, determined the rate of Infore's hairdresser employees' compensation including Plaintiff's.

78.     Throughout Plaintiff's employment, he regularly worked over (40) hours per week, but was not paid at the statutory rate of time and one-half as required by state and federal law.

79.     Upon paying Plaintiff his wages each week (until the end of 2020) and in every 2-3 weeks (since 2021) if at all, Defendants failed to provide Plaintiff with a wage statement setting forth among other things, Plaintiff's gross wages, deductions, and net wages.

80.     Defendants knowingly and willfully operate their business with a policy of not paying the New York State minimum wage to Plaintiff in direct violation of the FLSA and New York Labor Law and the supporting New York State Department of Labor Regulations.

81.     Defendants knowingly and willfully operate their business with a policy of not paying Plaintiff either the FLSA overtime rate (of time and one-half), or the New York State

overtime rate (of time and one-half), in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

82.     Defendants knowingly and willfully operate their business with a policy of not paying Plaintiff a "spread of hours" premium for each day that his work shift exceeded ten (10) hours per day, in direct violation of the New York Labor Law and the supporting New York State Department of Labor Regulations.

83.     At all relevant times, upon information and belief, and during the course of Plaintiff's employment, Defendants failed to maintain accurate and sufficient wage and hour records.

## STATEMENT OF CLAIM

### COUNT I
**[Violations of the Fair Labor Standards Act—Minimum Wage]**

84.     Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

85.     At all times relevant, Plaintiff was an "employee" within the meaning of 29 U.S.C. §§ 201 *et seq.*

86.     At all times relevant, Defendants have been employers of Plaintiff and engaged in commerce and/or the production of goods for commerce, within the meaning of 29 U.S.C. §§ 201 *et seq.*

87.     Defendants have failed to pay Plaintiff minimum wages entitled to under FLSA, specifically for the period between January 2021 until July 2022.

88.     Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

89.     Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

90.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

91.     Due to Defendants' willful violations of the FLSA, Plaintiff has suffered damages by being denied minimum wage in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**COUNT II**
**[Violations of the Fair Labor Standards Act—Overtime Wage]**

92.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

93.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC § 207(a).

94.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

95.     Defendants have failed to pay Plaintiff premium overtime wages to which he is entitled under the FLSA at the rate of time and one-half for all hours worked in excess of 40 hours per week.

96.     Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

97.     Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

98.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

99.     As a result of Defendants' willful violations of the FLSA, Plaintiff has suffered damages by being premium overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## COUNT III
### [Violation of New York Labor Law—Minimum Wage]

100.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

101.     Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

102.     At all times relevant, Plaintiff has been an employee of Defendants, and Defendants have been employers of Plaintiff within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

103.    Defendants have failed to pay Plaintiff the minimum wages due and owing under the NYLL and the supporting New York State Department of Labor Regulations.

104.    Through their knowing or intentional failure to pay minimum hourly wages to plaintiff, Defendants have willfully violated the NYLL, Article 19, NYLL §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

105.    Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants unpaid minimum wages and liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT IV
### [Violation of New York Labor Law—Overtime Pay]

106.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

107.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

108.    Defendants have failed to pay Plaintiff premium overtime wages due and owing under the NYLL and the supporting New York State Department of Labor Regulations at the rate of time and one half for all hours worked in excess of 40 hours per week.

109.    Through their knowing or intentional failure to pay minimum hourly wages to Plaintiff, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

110.    Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants unpaid overtime wages and liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT V
### [Violation of New York Labor Law—Spread of Hour Pay]

111.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

112.    Defendants regularly and knowingly required Plaintiff to be at work for a spread of hours equal to, or greater than, ten (10) hours per day, specifically for the period from September 2017 until December 2020.

113.    Defendants knowingly, willfully, and intentionally failed to pay Plaintiff one extra hour's pay at the basic minimum wage for every day on Saturday in which the interval between Plaintiff's start and end times exceeded ten hours, in violation of New York State labor regulations. N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.4.

114.    Because of Defendants' willful violation of the NYLL, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid wages originating from the spread of hours provision, liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre-judgment interest, all in an amount to be determined at trial.

## COUNT VI
### [Violation of New York Labor Law—Wage Notices]

115.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

116.    Defendants have willfully failed to supply Plaintiff with a wage notices, as required by NYLL, Article 6, § 195(1),  in English, or in the language identified by Plaintiff as his primary language, containing Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with

NYLL, Article 6, § 191;  the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner has deemed material and necessary.

117.    Through their knowing or intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq*., and the supporting New York State Department of Labor Regulations.

118.    Due to defendants' violation of NYLL § 195(1), Plaintiff is entitled to recover from Defendants liquidated damages $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

**COUNT VII**
**[Violation of New York Labor Law—Wage Statements]**

119.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

120.    Defendants have willfully failed to supply Plaintiff with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

121.    Through their knowing or intentional failure to provide Plaintiff with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

122.    Due to Defendants' violation of NYLL § 195(3), Plaintiff is entitled to recover from the Defendants liquidated damages of $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198-1(d).

### COUNT VIII
### [Violation of the New York Labor Law - Retaliation]

123.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

124.    NYLL § 215 prohibits an employer from terminating or disciplining an employee because "such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter."

125.    After Plaintiff complained to Defendant about pay, Plaintiff was discharged form employment. *See paragraphs, 63-75.*

126.    Specifically, after Defendants stopped paying Plaintiff at a fixed daily rate since the beginning of 2021, Plaintiff did not receive any compensation for the day(s) and/or week(s) that Defendant Park did not assign any customer(s) to Plaintiff. As such, Plaintiff complained to Defendant Park on multiple occasions about the unfair and arbitrary pay practice on multiple occasions. *See paragraphs, 66-68.*

127.    When Defendant Park received customers' calls to schedule an appointment, he assigned the customer to himself or to another hairdresser. Defendant Park only allowed Plaintiff to take customer(s) that insisted to receive services from Plaintiff.

128.    Since March 2020, Defendant Kim was occasionally present at Infore and handled reservations for the customers, but her presence did not increase Plaintiff's chances of performing services for customers. The ratio of assignments remained essentially the same regardless of which Defendant took the reservations.

129.    On the days that Defendants not assign any customers, Plaintiff had to stand-by at Defendants' hair salon and/or assist Defendant Park or other hair stylists while they were providing services to Infore's customers. On these day(s) and/or week(s), Defendants did not pay Plaintiff at all because Plaintiff did not perform any service *by himself* to Infore's customers.

130.    On or about July 9, 2022, Defendant Park assigned another hairdresser's customer to himself and the hairdresser complained to Defendant Park. As their altercation intensified, Defendant Park blamed Plaintiff that he caused another hairdresser to behave like Plaintiff and make similar complaints. Defendant Park yelled at Plaintiff and told him, "you work until tomorrow and **get out,**" without any explanation.

131.    Defendants acknowledged Defendant Park's outrageous and retaliatory conduct instructed Plaintiff, "please be understanding of Mr. Park's reaction […]. *See paragraph 73*

132.    Thereafter, Defendants Park and Kim terminated Plaintiff, and Plaintiff was not allowed to work at Infore any further.

133.    Defendant Kim knowingly allowed the conduct to persist without any attempt to intervene or correct Defendant Park's conduct.

134.     In committing the above-mentioned retaliatory acts, Defendants terminated Plaintiff, and retaliated against Plaintiff i for making complaints that Defendants violated the NYLL.

135.     As a direct and proximate result of Defendants unlawful conduct, as set forth herein, Plaintiff sustained damages and seek recovery for retaliation in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 215 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## COUNT IX
### [Violation of the New York Labor Law - Frequency of Payment]

136.     Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

137.     Throughout the period covered by the applicable statute of limitations, Plaintiff was not provided with payment for his wages for all hours worked each workweek at least as frequently as semi-monthly, in violation of NYLL § 191 on the regular payday for the pay period in which the workweek ended.

138.     Specifically since the beginning of 2021, Defendants unilaterally and arbitrarily announced that instead of paying Plaintiff at a fixed daily rate, Defendants would pay 45% or 50% of the customer(s)' service charge *only if* Plaintiff was assigned to perform the service to that customer(s).

139.     After Defendants changed Plaintiff's compensation structure, Defendants paid him in every two (2) to three (3) weeks only if Defendants assigned and/or permitted Plaintiff to

perform the service to Infore's customer(s). Plaintiff did not receive any compensation for the day(s) and/or week(s) that Defendant Park did not assign any customer(s) to Plaintiff.

140.    Throughout the period covered by the applicable statute of limitations, Defendants knowingly failed to pay Plaintiff at least as frequently as semi-monthly, if at all.

141.    Defendant's conduct was willful and lasted for the duration of the relevant time period.

142.    Defendants conduct was in violation of the NYLL.

143.    Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants, jointly and severally, liquidated damages equal to the wages of Plaintiff, together with costs and attorneys' fees.

## **Prayer for Relief**

WHEREFORE, Plaintiff requests that this Court enter a judgment:

a)    Declaring that Defendants have violated the minimum wage, overtime pay of the FLSA, and supporting United States Department of Labor Regulations;

b)    declaring that Defendants have violated the minimum wage, overtime pay provisions of the NYLL, and supporting regulations;

c)    declaring that Defendants have violated the Wage Theft Prevent Act;

d)    declaring that Defendants have violated the Spread of Hours law;

e)    declaring that Defendants' violations of the FLSA were willful;

f)    declaring that Defendants' violations of the NYLL were willful;

g)    declaring Defendants violated the NYLL, as well as the New York Executive Law;

h)    awarding Plaintiff damages for all unpaid wages;

     i)       awarding Plaintiff liquidated damages in an amount equal to the total amount of the wages found to be due, pursuant to the FLSA and the NYLL;

     j)       awarding damages of $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, as provided for by NYLL, Article 6 § 198;

     k)       awarding plaintiff liquidated damages of $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, as provided for by NYLL, Article 6 § 198;

     l)       issuing a declaratory judgment that the practices complained of in this Complaint are unlawful under the NYLL, Article 6, §§ 190 *et seq.*, NYLL, Article 19, §§ *et seq.*, and the supporting New York State Department of Labor Regulations;

     m)       awarding Plaintiff pre-judgment and post-judgment interest under the FLSA and the NYLL;

     n)       granting an injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

     o)       awarding Plaintiff reasonable attorneys fees' and costs pursuant the FLSA and the NYLL; and

     p)       awarding such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: Flushing, New York                           **SEO LAW GROUP, PLLC**
       September 19, 2022

By:   <u>/s/ Diana Seo</u>
      Diana Seo, Esq.
      136-68 Roosevelt Ave., Suite 726
      Flushing, New York 11354
      Telephone: (718) 500-3340
      Email: diana@seolawgroup.com
      *Attorneys for Plaintiff*

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

To: Sam Ju Park and Ji Hee Kim

  PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Seung Ju Shin intends to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Foresta, Inc. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them or the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on his behalf.

  Dated: September 19, 2022

**DEMAND BY EMPLOYEES TO INSPECT BOOKS, RECORDS, AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW**

TO:

> Foresta, Inc.
> 35-29 154th Street
> Flushing, NY 11354

PLEASE TAKE NOTICE, that Seung Ju Shin intends to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to him as laborer, servant and/or employee of the above corporation for services performed by him for the above corporation within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporation, and on his behalf.

To the extent that the above corporation keeps and maintains the predecessor corporation(s)' archival records, they are subject to this request and must not be destroyed.

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts there from on or after five (5) days from receipt of this notice.

Dated: September 19, 2022

## DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's causes of action and/or prayer for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Dated: September 19, 2022

**EXHIBIT 1**

## CONSENT TO SUE
## UNDER FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Foresta, Inc. d/b/a Infore and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Continent Fee retainer signed by the named plaintiff in this case.

Seung   Ju   Shin

Full Legal Name (Print)


Signature

9/5/22

Date